You're coming up. Thank you all very much, gentlemen. Okay, we have Joanna Wilson and some other people v. Navika Capital Group. Mr. Patel. I guess the first question is, who appealed? Who appealed? May it please the Court? And good morning, Your Honor. Who appealed? That is a good question, and I've got an answer for you, Your Honor. Would you like me to recite all the names into the record? No. I would like to know, you have footnote one to your reply brief. You list these people. How would I, if I represented your opponent the day you filed your notice of appeal, what would I look at to yield footnote one to know who is and who is not appealing of the 330 original plaintiffs? Right. Your Honor, the answer to that question goes beyond simply just the briefing. In the spinoff cases, the plaintiffs in those cases were subject to the equitable tolling order extension issued by the district court in Texas. Those particular plaintiffs were affected by the revocation of that equitable tolling order on reconsideration by the district court judge. But how would I know from, if I'm the Fifth Circuit or the district clerk in the district court or your opponent, the day that your notice of appeal is filed, how do I derive the list in footnote one of your reply brief? Where can I find that? How do I derive that list from the record of the district court? Well, your Honor, respectfully, one could derive that from the supplemental trial plan that was filed that showed the parties that were trial ready, that Judge Harmon ultimately decertified those individuals to file their... Because when I look at the motion, the order on reconsideration, there's a list there of there's no matchup between that. Some of the names in your footnote one are in the order and some of them aren't, and some of the names in the order aren't in your footnote one. So that's not a place I can go to look, the order you're actually appealing. When I look at the order you're actually appealing, there's a reference to all kinds of people. Somebody filed and then was laid and somebody couldn't attend trial and it's like eight people could do this and 26 people could do that and 100 people could do that, and there's no names. I have tried to reconstruct this list, and I'm unable to do it. And don't you think that's a little beyond liberal construction under rule three when I can't even, spending time with a highlighter, considerable time, cannot get to your footnote one? How is that a proper notice of appeal? Well, Your Honor, the jurisprudence under this circuit and the rules allow for liberal construction, and I guess one of the underlying issues with the case at the trial court level was who's in and who's out. There has never been a sort of consensus meeting of the minds as to who's in and who's out. Isn't that all the more reason why these liberal construction cases are cases where there's a lawyer who represents John, Joe, and Jane, and he just keeps saying, John, Ed, out. And we know it's Joe and Jane because the three of them have been together the whole case. It's the same lawyer. It's Ed, all. We're good to go. That's not your case by your own admission. Your own admission is you don't even know who your clients are half the time. You had to go get their consent to go file in Missouri, and that was part of the delay and all of this kind of stuff. So how can we liberally construe a document that you can't even, until the reply brief of your appeal, tell us who really is appealing, and it's nowhere in this order that you're appealing. There's nowhere where these names are listed, even as a group. There's 29 that provided proper responses, 130 were untimely, then these guys, 26 on summary judgment, and then so on and so forth. Does it even make sense to construe Rule 3 that liberally? Your Honor? Arrive at a list that you can't tell me how you got to it. Your Honor, I believe it does, and for the following reasons. First, as I mentioned earlier, there was never a consensus meeting of the minds, even with the trial court, to determine who was dismissed when. There were general admonitions that, you know, opt-ins who hadn't responded to interrogatories by this date, certain, are therefore dismissed. There were extensions. There were other orders that went back and tried to clean up who was out and who was in, but in our notice of appeal, under the rules, because all of the individuals are represented by the same attorney, we put Wilson et al. as the appellant. Is it fair to say, though, you are not appealing on behalf of all 330 opt-in plaintiffs? That is fair. Okay. And so the et al., you have a heading that has five names, and then you say et al. If et al. doesn't refer to those five names, where can we look to know what it does refer to? It's not the 330, so what is it? Well, it would be the body of the notice, Your Honor. The body of the notice actually expressly delineates the parts of Judge Harmon's order on reconsideration that we're appealing from. Essentially, we're appealing from the entire order, but out of an abundance of caution, we also included the phrase and the revocation of that controlling, because at that point, when we filed the notice of appeal, it wasn't entirely clear whose list of individuals that were in controlled. I don't want to beat this to death, but record page 4032, there is a list of names. I went through and compared it to your footnote one. Teresa Carrier is listed on record 4032, but not in your footnote one, whereas Jamie Franklin is listed in footnote one, or Janine, I can't read my writing. Somebody Franklin is listed in your footnote one, but not in this order. That's the point that I'm trying to make. I understand your point, Your Honor. Another place where all of the appellants are listed is in the Certificate of Interested Parties in the opening brief. I recognize that that is not in the notice of appeal, but due to the discombobulated nature of the individuals who remained in the lawsuit upon decertification and the list of plaintiffs that ultimately ended up refiling in these spinoff jurisdictions . . . Here's a housekeeping question, and I don't want it today, but I would ask both sides, because if you go back and look at the district court's orders, he lists everybody categorically, not by name, and you all do the same thing. I don't know how many plaintiffs were subject to each part of the order and who you claim is still in the suit and who you claim is not. There is an attachment about these people showed damages, these people didn't, these people have statute of limitations. The people are all over the map. There's no place in this record that name by name goes through are they in or they out. If you can't agree, tell us why, but if you can agree, would you please post submission, submit us a list on who's in what category so we can at least once and for all, once we decide how this case comes out, no matter how it comes out, we can list names so we aren't forever arguing about who's subject to what judgment. Absolutely, Your Honor, and to that end, there are certain plaintiffs, because as the panel well knows, these cases are being continuously litigated in the spinoff jurisdictions. There are individuals that have now been dismissed, individuals that have filed voluntary dismissals. Now they are still subject to the Southern District of Texas revocation of the equitable tolling order, but as far as being an active appellant with a dog in the fight, we can absolutely clean that up. How many named plaintiffs? I thought there were only two that had issues in this appeal. There are only two. Ashley DeLeon and Joanne Marie Wilson. That is correct, Your Honor. There are only two named plaintiffs that remained from our understanding and I believe also from appellee's understanding at the end of the case, and those two appellants here were dismissed. They're the Southern District appellants who didn't get their stuff in on time. Well, that's... Allegedly. Allegedly, yes, Your Honor. Okay, so does Collins, Vorkar, and Zweihach have a dog in the fight at all? No, Judge Haynes, they don't. Okay, so if we were to conclude that your notice of appeal is only good as to the five people named in the caption of the notice of appeal, I know that's not your position, but if we were to conclude that, then we would only have Joanna Wilson and Ashley DeLeon to deal with, and what is their claim? Your Honor, their claim is they're seeking this court to perverse Judge Harmon's order, granting a motion in limine to dismiss them for failure to provide individual damages. And that's the claim that you addressed in the last page and a half of your brief. Yes, Your Honor. The rest of your brief is dedicated to people in other jurisdictions regarding the equitable tolling order. Yes, Your Honor. That is by far the crux and the thrust of this appeal is the equitable tolling revocation. The equitable tolling revocation under the law of the sphere line of jurisprudence under 54B provides for wide latitude for judicial courts to come back and revisit interlocutory orders. And how many people are involved in that? From my estimate, about 44. Forty? Approximately four. Yes, Your Honor. Now, what actual effect has that order had on them? Well, Your Honor, let me back up a little bit. Part of the issue with Judge Harmon's revocation of the equitable tolling order is she did so 274 days after she initially granted the equitable tolling. As this panel is well aware, in FLSA actions, your statute of limitations runs from the date of filing. So Judge Harmon, in the first instance, decides that the group cannot go forward as a collective group. She decertifies the class. She dismisses the individual opt-ins. At that point, I concede, it probably wasn't as clear as it should have been who those individual opt-ins were. We took our list. We attempted to file these in other jurisdictions under her equitable tolling order. The equitable tolling order, 30 days, that timeline was not sufficient. We filed for an extension citing one particular court, because that was the only court left to be submitted for filing. The next day, we got deficiency notices from the clerks of court for the Northern District of Oklahoma, the Southern District of Alabama. We submitted that filing on July 7th. On July 8th, they opened up the new case file, so we get a filing date of July 8th. We realize that these complaints are not deemed filed as of July 8th. We're only looking at the period after July 7th of 2014 up through July 28th of 2014? Yes, Your Honor. Is that three cases or five cases? That is all five cases filed by the 28th, yes, Your Honor. And that five cases includes the 40-some-odd people that you're talking about? Yes, Your Honor. So the new courts did not accept the filings? The new courts did accept the filings, Your Honor. Appellants will concede that some of the local rule filing requirements, for example, the Northern District of Oklahoma, the caption requires that each party be numbered when the complaint was initially filed. They were not numbered, so we got a deficiency notice. We fixed that, and we've got a July 9th, I believe, filing date for Oklahoma. And so that created the problem, and that is why we filed the amended motion for extension of equitable tolling, citing . . . But what effect does the tolling order have on a new judge in a new jurisdiction? Are they bound by it, or is it something new that that judge independently can take a look at it and make a decision? Judge Prado, practically speaking, we don't know. We've been before these other judges, and they've expressed a concern over the order. They've expressed that they would like to give the Southern District of Texas as much deference as they can. Certain judges have stated that, well, we'll split the baby perhaps, and you lose a few days as far as equitable tolling goes. But by and large, the appellant's position is that under the 54B standard, a judge should not direct plaintiffs with the instruction to go refile, provide them the cover from the statute of limitations to go file, and then 200 and some odd days later come back and say, you know what, never mind. I find that I'm revoking equitable tolling. That leaves some of our complaints as filed untimely. Now . . . well, go ahead. You did not respond to the motion for reconsideration. You didn't file a response in opposition to the motion for reconsideration. Your Honor is absolutely right. We did not file an opposition to the motion for reconsideration, and there's a simple reason for that. The motion for reconsideration stated to the Southern District of Texas that the appellees now were not able to file an opposition. So out of an abundance of caution to preserve their rights, they filed an opposition. The evidence submitted with the motion for reconsideration was a pacer printout of the filings as well as copies of the complaints. Now, from our perspective, rather than reopen and rehash with additional papers, we felt that our initial filing was sufficient. Motions for reconsideration aren't granted as a matter of right. They're granted sparingly, and that was our position, and that's why we did not respond. I mean, I know in some jurisdictions you don't have to file a response, but in the Southern District, I don't think there are local rules provided for not responding. In some jurisdictions, it's deemed that you have no objection to the motion if you don't file a response in opposition. Your Honor, I agree with that sentiment. And in the Southern District of Texas, there is a local rule that states if there's no opposition to a motion, it's deemed unopposed. But even with that, the motion for reconsideration and the analysis undertaken by the Southern District of Texas is inherently flawed. The Southern District of Texas goes through all of our filing dates, goes through the arguments that appellees made, and then takes judicial notice of service issues in these spinoff cases, which are, without a doubt, under the jurisdiction of those particular judges. The Southern District of Texas. I want to make clear that at one point in your brief you talked about it's unfair to apply the reconsideration on the tolling issue to people who timely refiled in other jurisdictions. I thought Judge Harmon's order said the extension was good through July 7, but it's not good after that. That is correct, Your Honor. When you asked me the question earlier, I assumed you meant were all cases filed by the 28th. You're absolutely right. To you, the cases were deemed filed by the 28th. What does your statement mean that it's unfair to those who timely refiled mean? Well, Your Honor— Who timely refiled. All five cases. Okay. Let me try to do this linearly. Perhaps I'm not being clear. Judge Harmon decertified. Judge Harmon granted 30 days of equitable tolling for the individual opt-ins to refile their cases. The 30 days was not enough. Four of the five spinoff cases were— But everybody who filed up through July 7 are not affected by this order. That is correct. Assuming we agree with the other side that July 7 is the cutoff date, who timely filed? The case— That's going to be affected by Judge Harmon's order? Nobody. Okay. All right. So nobody timely filed. The only people we're talking about is after July 7, before July 28. And it all turns on whether or not—nobody timely—nobody of those people timely filed unless there's an equitable tolling order. That is correct. Okay. I just want to make that clear. And that is the crux of our issue, that at the time of filing, those filings were timely. And 200 and some odd days later, Judge Harmon deemed them untimely. I thought it meant something else. I just want to be clear about that. Okay. Thank you. Thank you. Thank you. Mr. Shepard. Great. Please acquit Michael Shepard, Bell and Stolbader, and Nadler for the appellants. Your Honor, I think you guys recognized the trouble. And I think it's very hard to look at these two orders or the order that they're appealing from, which stems from two motions, without looking at the history of the case. Pretty much defendants in this case kind of felt like a dog chasing their tail, never quite could get what the plaintiffs were actually saying. We never got damage calculations. As an officer of the court, can you represent to me whether or not you can construct footnote one of the reply brief from the record and your knowledge of the case? In other words, I couldn't do it, but that's because I'm not enmeshed in it the way you are. Was footnote one of the reply brief and or the certificate of interest news to you as far as who was appealing and who was not? I have to say, I took, as I have to do, I have to always take what's been filed on the face of what's filed. What was filed was the five people and that. Given the problems we've had in this case, who knew what was coming? That's the problem we faced throughout this entire case. Part of the reason that you're having so much trouble, Your Honor, is because of their noncompliance throughout the entire portion of the case. That's what led to that January 17th order. You were totally surprised. Nothing in this case surprises me, Your Honor. I mean, as you can see, it's a very tortured history and a very, as I believe one of you used, discombobulated sort of case. When he designated the equitable tolling piece, which didn't apply to any of the five named people, what did you think that meant? I didn't know, because I thought he was just captioning what the order was and how it had been referred to in some of the other cases. Because it's all one order. Yes, it's all one order. It's the motion and lemonade and that. As an officer of the court, I can truly say, I don't know what was coming. Could I have imagined this in one scenario? Sure. But that's not the point. The notice of appeal is almost like a jurisdictional, it's a jurisdiction. It is jurisdictional. It's not like a jurisdiction. It's akin to a summons. And if that was a summons, who would that have applied to? That's kind of the way I look at it. You can't just say, oh, you should have assumed all these other people were getting sued. Not all the defendants were listed. There was nothing in there that goes through and says, oh, this is who's going in. And a lot of that stems from the fact. And not even by category. It's not Joanna Wilson and the 26 plaintiffs who lost on summary judgment. Or Joanna Wilson and the people listed on page 7 of the order of reconsideration. Or anything. I mean, as I said, the people who actually are listed don't match up with the footnote 1. And a lot of that goes to how the case was conducted. And that's why. And what ended up. There was motions to compel discovery, late service of discovery, et cetera, issues. Until that January 17th order, where Judge Harmon laid down and said, look, here's the gauntlet. There's been enough. If you didn't timely serve interrogatories, you're out. If you didn't serve a verification with your interrogatories, you got until February 10th. If you claim no damages, you're out. She laid the gauntlet down and gave plaintiffs yet another chance to come back and say, confer, let's get this list together. And that couldn't even be done. So, NAVICA filed its purported list of what it assumed. But that was all caveated by the fact that there was no description of damages that had been provided throughout the entire case. Let me ask it this way. Because it's not so much. I realize that when you have an opponent that you feel is, like, messing around with the rules, that anything can be predicted. So I'm not so much interested in what you could have imagined. I'm interested in whether I could look in the record and find, derive footnote one reasonably from the record. If it was going to be, here's the problem. The order that I put it, the motion for reconsideration and to define who was left in and who it was, that was my list as I understood it. Because I wasn't getting anything through. And is that footnote one? That is not his, as you mentioned, I don't believe that's footnote one. That's the, and the order doesn't line up to footnote one. That's the page seven order. Yeah, the order is, her order, I think, is almost verbatim of what we submitted of our list because there was no oppositions. So even you, at the time you're trying to sort through it, you give her something, she puts in her order, but it doesn't match up to footnote one. Right. And as you went through the exercise, it just doesn't match. So there was no way to know, Emerald Hospitality, who was in it and is named in this one, is it in? Which defendants are in, which ones aren't? So that's why we had to approach the brief the way we did. So the motion, so them saying that we're appealing the motion for reconsideration didn't put you on notice of any type of who was involved in the case, whether it was the opt-in plaintiffs or not? I mean, just the fact that this is what we're. I have to take what's filed with the court at its face value. Then I then go, well, what's going to happen based on the case history? And that's all I, and that's. But there were 330 opt-in plaintiffs originally. Yes, Your Honor. And he's not contending. He appealed on behalf of all of them. So even that sort of global concept is out the window because he's got these 40 people that I'm still trying to figure out who they are exactly and where they came from. And they're not even referred to as a group in some way, as some term of art. And part of the issue as to, as I believe Judge Owen mentioned and asked for post-briefing submissions, that's, they had their opportunity to do this. They had ample opportunity to go in and either, A, file opposition to our motion to reconsider, file asking the court to reconsider the motion or the reconsideration order and the motion in limine order, saying, oops, Judge, you got it wrong. Let's fix this. Appeal the, or, you know, redo the judgment to try and set the record. None of that was in the record. Footnote 1 could be in their notice of appeal. That very well could be. That listing of names that's in footnote 1 could be listed in the notice of appeal. There's nothing that would have stopped that. I suspect they didn't know who they were appealing on behalf of when they filed the notice of appeal. And that's why the list came later. But I don't know that, and I don't know that that's relevant for Rule 3 purposes. Exactly, Your Honor. Just so it's clear, I don't want you all to fuss over what might have been. I just want to know who you all can, if you can, agree he was currently in front of this court. Assuming we find the notice of appeal was adequate. Just assume that. It's a hypothetical. I'd like to know who this, who we're dealing with by name. I would say, Your Honor. No, not now. No, no, no, no. There's a point that I think has to be made here. This court's not to go in and start fact-finding. On the record that it has right here in that order, the people, if you put it in that order. If we disagree with you about the notice of appeal, we still need to know what judgment, person by person, this court's judgment affects, whether you win or lose. It's in that order. It's in that order, Your Honor. And that's why I'm saying there was no opposition. They disagree. If they disagree with my list. Let's assume we disagree with you on that. Okay. If you disagree with me on the order. Let's assume, worst case scenario, you lose everything, you lose everything. Imagine every possible person that this judgment could affect. That you agree has a live claim, whether it's valid or not, so that when we issue a judgment in this case, we can name who it applies to. Is that fair? Yes. Okay. I understand your point. And I don't want you to use this as an advocacy tool. No. Either one of you. But I don't think the court has to get there, or should it, because of what the record is below. Well, our judgment has to affect individuals. And all I want to say is whatever our judgment is, win, lose, or draw, I want our judgment to name the people you both agree have allegations or contentions. And I can state right here what my position would be. All right. Do it in post-submission and argue to us then. Okay. I don't want to hear it now. All right. Let me ask you, two people we know are alive and kicking. Are Joanna Wilson and Ashley DeLeon. They are not actually alive and kicking. Why not? That's the problem with this. They failed to disclose their damage calculations. Okay. But they're alive and kicking in this appeal. They clearly filed a notice of appeal with their name on it, and they were dismissed in this order. Yes. And my question to you is, what is the justification for death penalty sanctions against them for failing to answer one of the many inquiries that's out here? Where is that in this order, that lesser sanctions aren't adequate, et cetera, et cetera? So we have to back up and look at the history of the case on this one. You have to back all the way up and look at what happened throughout the entire case. You get to this positive. You have all the discovery disputes. You have all the stuff. You have the Rule 26 disclosures, and you get to the dispositive motion date. That dispositive motion was made with what we had at that time. That ended up Judge Harmon issued the 17 January order. And she said at that time, plain enough, I'm going to give you another chance to disclose your damage calculations. Anybody that doesn't disclose their damage calculations by X date because defendants need that. It's a due process for them to go to trial. They're entitled to know what the damage computations are. So she gave them yet another chance to do it. No motion to extend was made. Nothing was done. And that's how we get to where we're at. And that's why they were dismissed technically by the January 17 order for their failure to comply with that order. That's how we ended up getting to the death penalty sanctions on this. Doesn't she have to make findings of bad faith, yada, yada, yada? She did, Your Honor. You're saying that's in the January 17 order, which they didn't appeal. Right. She set up, as we briefed in there, she set up by that January 17 order, if they would have complied and done everything and could have gotten all the people that were to the trial or done whatever and submitted a trial plan and done everything, we would have had a big old trial going on. But they didn't. And she gave them yet another chance throughout all that. And to be honest, once it got kicked off, I think Judge Harmon would have been a little lenient if they came in late and gave the disclosures. There was nothing. There was nothing whatsoever done. Let's talk about the equitable tolling. Yes. I mean, we have jurisdiction, which we haven't decided. Why does it matter for equitable tolling purposes how diligent the plaintiffs were in lawsuits that have since been filed in other jurisdictions, on how diligent they were in service, in getting service? Service isn't the issue here, Your Honor. As what we put in the motion for reconsideration is, and as counsel stated, on the 7th when they made their motion, they said they dutifully filed in all the jurisdictions. And I don't have the dates. But as of that point, as of the 7th, only two, according to the PACER records, only two had been filed. So that was it. And one of those was Georgia, which has now been dismissed. The service issues is not what she went into there. It was the representation that they've been dutifully trying to do everything to get these cases done and go. And that's what she looked to on that. She looked at, wait, you just told me everything was filed, and I now see PACER records are this, that weren't filed on the 7th, that weren't filed? Well, with due respect, they were filed within a few days. So we're talking about two or three. Well, if that's a statute of limitations, that's a statute of limitations, Your Honor. Well, and she had granted a motion for reconsideration. Apparently what ticked her off was the service efforts. And what does that have to do with the whole equitable tolling issue? Why does she let those other district courts decide whether the service efforts were diligent or not? She didn't rule on the service efforts. She didn't. She used that as just another element to bolster her opinion on the misrepresentations that were made to her about the filings. And we can discuss what was that. None of this is in the record. That's the problem. You put the PACER records in there. The PACER records, that's it. That's all that's in here, my declaration that was submitted on the motion for reconsideration. Did she have a hearing on that? No, because everything was on the papers. But everything there was that. There was nothing else there. That's what the record was. And it wasn't the service issues that I believe that was the bothersome. It was that the cases weren't filed when we said that we're dutifully doing it. It was waiting to the last minute of the last day, because this is ultimately a statute of limitations issue, is ultimately what it breaks down to. So if these people don't timely file, it's just like any other plaintiff that files three days. Why isn't this told anyway during the period that it was certified without her saying so? Because the problem with the tolling on that issue is that, as I understand it, the – how do I put it? Most of these claims would be time barred after the decertification because they were so old. They were filed the day of their – Right, because this case was litigated for – Like you had a two-year statute. They were filed on the eve of the two years. Other than that, we'll give them three years. We'll give them the willfulness in the three years. This case kicked around for two, two and a half years before certification. And then all the people started certifying based on this older class that was a couple years old at that point. Has anybody been affected by this tolling order? I mean, has there been a court in some other jurisdiction dismissed these cases on statute of limitations and said because of the tolling order in the Southern District of Texas? The only – the ones that come to mind, and I can't speak to all of those, but most of the courts passed on that issue at the first juncture because we filed statute – we filed a motion to dismiss on statute – for instance, the statute of limitations. They missed the – because of that. I do not believe any judge has kicked out anybody based on that. I think most of them have said, you know what, let's see how this percolates out because – and we'll see at summary judgment. Let's talk about the – I'm looking at Judge Harmon's order, and she says she takes judicial notice of the record in the above five cases, and she talks about service issues, and she goes through in some detail. Are you saying she erred in taking judicial notice of the records in those cases? No, I don't believe so because those were put in for the PACER, and what that goes to were the representations made to her that plaintiffs were acting dutifully. And I would submit to the court waiting until the last day to file papers and risking that something doesn't go through. Let's take them out at the word that they sent everything in on the 7th. Isn't dutiful. I mean, she took – you're saying it's not in the record, but she goes through in some detail about what happened about service issues, and you're saying we can't consider that because it's not in the record, but Judge Harmon considered it. You can consider what's in her order. And I'm saying that she took into account efforts to serve after cases were filed in other jurisdictions as a basis to retroactively yank her tolling order. And my question is why should that have any bearing at all on whether to originally grant the equitable tolling order and let the other district courts deal with whether they thought the service efforts were timely or not? She didn't rule on whether the stuff was timely. She used that as a basis for yanking. To further bolster her, to bolster that poor issue that they were doing. And we say if that's an improper basis, then where are you? I believe that's a secondary basis, not the primary basis for her order. And, again, there was nothing submitted in opposition. They are now trying to litigate what should have been litigated in the district. Well, she gave them an extension of time to file to the 28th, and the fact that they filed on the 7th, 8th, 9th, or 10th shouldn't matter if they filed before the 28th. So that could not have been the basis for saying, well, I gave you the 28th, but you didn't file on the 7th, 8th, or 9th, so now I'm going to take away the time to file within the 28th. That is nonsensical with all due respect. The only basis for revoking the extension to the 28th were the service issues. I don't see it for that, but because— Well, tell me how that's wrong. I don't see that that was her primary reason for doing it. I think the representations that— She looked at PACER, and cases were filed on July 7th, 8th, and 9th. But she had given them until the 28th. So why would that upset her? Because in the paper that was submitted originally on July 7th, what was submitted on July 7th said there was one case, the Western District of Missouri. With all due respect, I don't think that would cause a judge to change her mind when they had complied well before the 28th. But not when the initial order was issued. They filed this the 7th, they filed an amendment, and then immediately the day after the order was issued. She didn't have any of this before her to know that the statements that were made to her were not true and accurate. That's what I think she based her opinion on. And you've got to look at the entire history of the case of plaintiff's dilatory conduct. This doesn't exist in an isolated universe. This has been a long time coming for the entire case. It was just yet again another instance. Were you the trial counsel? Yes. I came into the case right after Superstorm Sandy, so that would be 12 or 13. So I've been on the case since then. Let me ask you, I think I know what your answer is going to be, but there was no response to your motion for reconsideration. No response. How does the court interpret that? Same for the motion in limine, Your Honor. No response, no opposition. We even supplemented it down the road as more stuff came out that was being filed by the plaintiffs to supplement our motion in limine. And still no response. Because we wanted to be forthright with the court and address the issues. Still no response. And you're right, in the Southern District of Texas Rule 7.1, I believe it's 7.1, says that if you do not respond, it's deemed no opposition. And they can't now start making arguments here for the first time on appeal if they thought their arguments ---- Well, even on summary judgment, if you fail to file a response, and you can still appeal that and say on the face of the summary judgment motion it fails. You don't win just because you fail to file a response. No, but you're then restricted to the record there at that point. Right. I agree with you. And the problem with their brief was there was a whole litany of facts that came in that weren't ---- I'm just ---- If we consider her order and what she said she took into account, they don't lose because they failed to file a response to the in limine. I can understand that, but I don't think that was all it was. She didn't just say there's no response default motion. That's right. She didn't. But I'm just saying you can't say in this court that we can't even consider this appeal because they failed to file a response under the rule. I understand that. But what I mean by that is that we're restricted to the facts that are in the record. I agree with that. You keep saying, well, they failed to response, they lose, and that's not the law. No, that's misstating. What I mean by that is, look, they can't now go justify all the acts. For instance ---- They're confined to the record. They're confined to the record. They don't lose automatically because they failed to file a response. Exactly. And, Your Honor, what they could have done when I filed my motion is recount. If they had all these issues, they could have recounted those to Judge Harmon. And if they had all these technical issues of a significant nature, they could have recounted that to Judge Harmon in opposition to my motion. I've got your argument. All right. Okay. Thank you. Patel. Thank you. May it please the Court. Judge Haynes, I'd like to start by readdressing your question to me earlier where you asked where in the record could you find the appellants here. They would be in an appellee's motion for reconsideration. In his motion for reconsideration, he attached all of the complaints, with the exception of the Western District of Missouri, to his motion. He also created a table with his objections to ---- Is that your footnote one? Is that table? That table, those complaints, and also the Western District of Missouri complaint, which, while it was not filed in the record, Judge Harmon did take judicial notice of the docket issue. That page seven of her order is his submission, and it doesn't match up. It's not even a subset of your footnote one. It doesn't match up. It matches up in part, but it's like two circles that overlap in the middle, but there's edges of the circles that don't. And so I'm still ---- I frankly think rule three can't be that grossly avoided by just let's make up and let's look around and let's figure out how did you come up with footnote one? Your Honor, we came up with footnote one by looking at those opt-ins that refiled their cases and would have been subject to the equitable tolling order, which are the named plaintiffs in four of the five complaints that he attached to his motion for reconsideration. But they aren't all the people listed. Some of the people listed in the order you appealed aren't in your footnote one. Why is that? That is because in his motion for reconsideration, he proffered his own list. And the judge, Southern District ---- And then you've also added names. There's like 20 other names on your or 15 other names in your list that aren't in the order. And that's what I'm saying. They don't match up. So I can't just look at his stuff. If his stuff had said it's John, Jane, and Jeff, and then now you said footnote one said John, Jane, and Jeff, I would ---- I'm not sure that's proper under rule three, but you would at least have an argument. But respectfully, you're basically saying that if you have a case with a lot of plaintiffs, you can just make up later on who you want to have been part of your notice of appeal as long as the phrase et al. appears somewhere in there, even if there's no way for anybody to figure out what you're talking about. And it isn't all the al's who are et, because it's not all 330. And you're absolutely right, Judge Haynes, except for in this particular set of circumstances, Judge Harmon's equitable tolling order only applied to a certain set of folks. And those folks are the plaintiffs in the spinoff cases. But even that's a bit of a moving target, you have to admit, given what I've just said, looking at her order and comparing it to your footnote one, even that subset, so to speak. Right. And respectfully, in his motion for reconsideration, he attaches all of the complaints except for the Western District of Missouri. He objects to the filing of certain of those plaintiffs and proffers his own list. So what the Southern District of Texas judge ultimately used was his list instead of the name plaintiffs in all five of the actions. And the Southern District of Texas judge did take judicial notice of all of these docket sheets. So that, it's kind of a quilt, Your Honor, I agree. It's frustrating. It's been frustrating for us. He said on the two people who clearly have appealed, DeLeon and Joanna, whatever, Wilson, as to those two, what is your response to the argument that January 17 order said, you better do it, failing which, you're going to get dismissed, and then they didn't do it. What's your response to that? My response to that is that argument should fail for a few reasons. First, while the January 17 order did state that, individual damage calculations were provided. They may not have been provided in a formalistic disclosure, but they were filed with the court in a supplemental trial plan. The Southern District of Texas, in their decertification order, suggested that the failure to, and the Southern District of Texas judge did find that the damage model that we provided to the other side was insufficient under the order. I will concede that point. But in decertifying the class, the judge unequivocally states that the failure to provide individualized damage calculations is more justification for decertification. But the problem that you have is fundamental. You're going to go to trial, and your opponent doesn't have any idea what you're saying. I mean, this is an underpaid wage. What were they underpaid? How are they going to go to trial? Because the whole thing in a wage case is, you know, where did you work some hours that you didn't get paid for, essentially, and there can be other issues, but how do they go to trial on this case without the information? On De Leon and Wilson, forget everybody else. Your Honor, on De Leon and Wilson, the damage calculations that were provided were based off of interrogatory responses. Defendants did produce 50,000 pages of records, if you want to call them that. Essentially, the Southern District of Texas expected plaintiffs to go through the haystack, find all the needles, culminate the needles together, and then reproduce the defendant's materials back to them. Well, wouldn't you have to do that for a jury? I mean, if you're going to get up at trial, are you just going to go, well, ladies and gentlemen, there's 50,000 pages here. We don't have any idea what Ms. Wilson should have gotten, but we'd sure like you to figure it out. Are you going to have to do that for the jury, so you've got to do it for the defendant in advance? I absolutely agree with that position, Your Honor. Except for the records were so incomplete that the testimony was going to control. We were going to put forth the testimony of these plaintiffs. Testimony of? Of Joanna Wilson. Your clients. Exactly. Why couldn't you ask your clients and then provide that to the other side?  Okay. Thank you. Thank you.